(No. 45786.— )

AMERICAN AIRLINES, INC., *et al.*, Appellants, v. THE DEPARTMENT OF REVENUE, Appellee.

*Opinion filed Sept. 17, 1974.—Rehearing denied Nov. 26, 1974.*

Gardner, Carton, Douglas, Chilgren & Waud, of Chicago (James A. Velda, Joseph P. Carr, and Robert J. Wilczek, of counsel), for appellants.

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel and Morris Bromberg, Assistant Attorneys General, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

The principal question presented by this appeal is whether the sales by one of the plaintiffs, Hot Shoppes, Inc., which later became Marriott, Inc. (hereafter, Hot

Shoppes), to American Airlines, Inc., the other plaintiff (American), of food that American served on its flights are "sales at retail" and thus taxable under the Illinois Retailers' Occupation Tax Act (the ROT) (Ill. Rev. Stat. 1963, ch. 120, par. 440 *et seq.*) and the Illinois Use Tax Act (Ill. Rev. Stat. 1963, ch. 120, par. 439 *et seq.*).

Section 2 (par. 441) of the ROT Act states in part: "A tax is imposed upon persons engaged in the business of selling tangible personal property at retail \*\*\*." Section 1 defines "sale at retail" as: " 'Sale at retail' means any transfer of the ownership of or title to tangible personal property to a purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration." Section 3 (par. 439.3) of the Illinois Use Tax Act declares: "A tax is imposed upon the privilege of using in this State tangible personal property purchased at retail \*\*\* from a retailer." Another part of said section 3 (par. (d)) provides that if the sale of personal property was not taxable under the ROT Act the use tax shall not apply to the use of the tangible property sold.

The plaintiffs' position is that the sales by Hot Shoppes to American were not sales at retail under section 1 of the ROT Act. They say that they were not transfers of the food for use or consumption by American, but rather they were for resale to American's passengers for a "valuable consideration."

Hot Shoppes, which was engaged in the business of catering food to motels and airlines, had a contract in 1963 with American to supply the airline with meals and non-alcoholic beverages for service to its passengers and crew members. The prices of the meals sold by Hot Shoppes depended on what was to be served. For example, breakfasts cost as little as $.50, while dinners cost approximately $3.75. The price was also affected by the class of service given the passenger. To illustrate, on some dinner flights passengers traveling first class were served filet mignon and coach passengers were served pot roast.

Prior to November 1963, Rule 7(1) of the rules of the defendant, the Department of Revenue, provided:

"1. *Vendors of Meals—When Liable for Tax.* Persons engaged in the business of selling meals to purchasers for use or consumption incur retailers' occupation tax liability on their receipts from such sales. It is immaterial that no profit is realized from the operation of any such business if the seller is engaged in a commercial enterprise, or if the seller engages in activities which make him taxable under the terms of paragraph 1 of Rule No. 38 of the retailers' occupation tax Rules and Regulations. It is also immaterial that the class of purchasers may be a limited one, such as the employees of a particular employer who operates a cafeteria or other dining facilities for the benefit of his employees.

The foregoing rule includes, but is not limited to, the following types of vendors:

(a) hotels;

(b) restaurants;

(c) caterers;

(d) boarding houses;

(e) concessionaires;

(f) nonprofit service organizations and institutions to the extent indicated in paragraph 1 of Rule No. 38 of the retailers' occupation tax Rules and Regulations, and similar enterprises when conducted with a view to profit to the extent indicated in paragraph 3 of said Rule No. 38;

(g) employers who operate dining facilities for the benefit of their employees, except to the extent noted in paragraph 1 of retailers' occupation tax Rule No. 38." Department of Revenue, Rules and Regulations, Rule 7(1) (a-g).

The Department then amended Rule 7(1) by adding provision (h), which declared:

"(h) effective November 1, 1963, sellers of food and beverages, delivered in Illinois to airlines for use in serving passengers and crews on aircraft without a separate charge for the food or beverages being made by the airline, regardless of whether the airline may serve the food and beverages in Illinois or outside Illinois." Department of Revenue, Rules and Regulations, Rule 7(1)(h).

The promulgation of provision (h) led to the controversy we consider here. To lay a foundation and acquire standing to challenge the amendment, Hot Shoppes paid ROT taxes on its sales of meals, foodstuffs and non-alcoholic beverages to American from November 1 to November 15, 1963, and American paid use taxes on its purchase of meals, foodstuffs and non-alcoholic beverages from Hot Shoppes between November 16 and November 30, 1963. Alleging payments for which they were not liable, the plaintiffs subsequently filed claims for credit of these taxes paid to the defendant. On September 22, 1971, a hearing referee of the defendant denied their claims for credit. (The record does not show when the plaintiffs filed their claims for credit, nor does it account for the delay (or nonaction) between November 1963 and 1971.) Hot Shoppes and American then filed complaints for administrative review in the circuit court of Cook County, and in November, 1972, that court held that Hot Shoppes was liable for the ROT and American for the use tax on the basis of the sales of food to American and served by American to its passengers. The court also decided that Hot Shoppes was not liable for the ROT and American not liable for the use tax on sales of food that American served to its crew members because, the circuit court reasoned, crew members had been served the food for a " 'valuable consideration' within the definition of 'sale at retail'." The court declared that American was liable for the ROT, in effect holding that American's service of meals to crew members was a sale at retail to those employees.

The plaintiffs' appeal from the circuit court's judgment is before us under the provisions of our Rule 302(b). 50 Ill.2d R. 302.

We consider that there was a "sale at retail" by Hot Shoppes to American and consequent tax liability under the ROT for Hot Shoppes and under the Use Tax Act for American as to the food served the passengers. The food

was for American's use and consumption, and it was not resold to the passengers within the meaning of the ROT.

The evidence presented at the hearing before the referee showed that when American purchased the food, or meals, from Hot Shoppes it was not for purposes of resale. Rather, the service of meals to passengers was to be considered a commercial amenity and operating expense, necessary in the competitive field of air transportation. It included testimony that there is not a separate charge for the meal a passenger is served; meal service is included in the price of the ticket purchased; the same fare is charged on flights between the same points even when food is not served on a flight; if meals are not served on a flight because of turbulence or other prohibiting circumstances a passenger cannot obtain any refund; a passenger telling a ticket agent he did not desire a meal would not receive a reduction in the price of his ticket; if he did not eat his meal during the flight he could obtain a voucher which would be redeemable for meals at a designated airport restaurant, but he would not be entitled to a refund for the price of the meal if he did not desire a voucher; meals amounted to 3/10 of one percent of American's total costs; there are factors other than the differences between the food in first class service and coach service, such as more comfortable traveling conditions, free alcoholic beverages and generally better service; American did not mark up the price of the food served in order to obtain the profit on the sale, though the cost of the food was considered by governmental authorities when flight price schedules were being determined; American had to serve food in order to compete with other airlines, and an airline's "chances of survival" would be "nil" if they did not offer meals.

We consider that the evidence showed that American did not acquire the food from Hot Shoppes for resale to its passengers for a valuable consideration. This court con-

sidered a situation in *Robertson Products Co. v. Nudelman*, 389 Ill. 281, which resembles the one here. There the vendors sold paper, tissue, paper napkins, drinking straws and soap to hotels, restaurants and office buildings, which furnished the materials to their guests and tenants. The hotels, restaurants and office buildings did not charge a specific consideration for these articles but added their cost to the total price they charged for the services they provided. The trial court held that the sales were sales at retail, within the meaning of the ROT Act (Ill. Rev. Stat. 1943, ch. 120, par. 440 *et seq.*) and denied the vendors an injunction to restrain the collection of ROT. On appeal the vendors argued that the sales were not sales at retail because the purchasers resold the articles to their patrons. They argued that a resale was shown by the fact that the purchasers had added the cost of the articles to the total prices they charged. This court in rejecting this argument said: "That no direct charge for these commodities is made by hotels or office buildings, in the generally accepted sense of making a sale is admitted. *** [I] t is generally recognized that such articles are to be furnished by the hotel as a standard method of doing its business ***. This is likewise generally true of office buildings. While these items must be counted a part of the operating cost of the business and such cost may be said, therefore, to enter into the matter of fixing charges, the same is true in the case of furniture and other like equipment, linen towels and metal or glass cups. No thought of transfer or resale is indulged. Hotels and office buildings are not in the business of selling paper napkins, tissue, cups, plates and the like, but they are in the business of running a hotel or an office building or the like." *Robertson Products Co. v. Nudelman*, 389 Ill. 281, 285-286.

Another decision which is relevant is *Fefferman v. Marohn*, 408 Ill. 542. It involved three consolidated cases of vendors selling textiles, bedding, towels, gauze, bandage

muslin, surgical instruments and rubber gloves to the State of Illinois, to the Cook County Hospital and to penal institutions. The vendors contended that they were not liable for the ROT on the sales because the purchasers sold, transferred or gave the materials to their patients and inmates. They argued that the patients and inmates were the actual users and consumers and therefore the sales were not taxable under the ROT Act (Ill. Rev. Stat. 1947, ch. 120, pars. 440 through 453). This court held that the vendors were liable for the ROT on the sales, stating: "We think it follows from a consideration of *Robertson Products Co. v. Nudelman,* 389 Ill. 281, *** that a sale is one for use and consumption and not for resale, even though the purchaser transfers the commodity purchased, provided he does not transfer it for a direct and specific consideration." *Fefferman v. Marohn,* 408 Ill. 542, 547; in accord, *Modern Dairy Co. v. Department of Revenue,* 413 Ill. 55, 62-63.

The plaintiffs have constructed an argument which centers on the term "valuable consideration" appearing in the definition of "sale at retail" (Ill. Rev. Stat. 1963, ch. 120, par. 440). They say that the passenger, in paying the air fare, provides a valuable consideration, and they then conclude that when the airline transfers the food to the passenger there is a resale "for a valuable consideration." Thus, the contention is, because American resold the food, the sale by Hot Shoppes to American was not a "sale at retail." The argument does not persuade. As we have observed above, the evidence showed that meals were not separately considered and charged but were treated as an operating expense of American. Consideration must be bargained for. (Restatement of Contracts, sec. 75 and Comment b (1932); 1 Williston of Contracts sec. 100 (3d ed. 1957).) Obviously there was no bargain as to the meal American would serve the passenger and the charge he would pay. Here American was essentially selling trans-

portation by air, and that is what its passengers were purchasing. There was no sale of the meals within the meaning of section 1 of the ROT Act (par. 440).

The plaintiffs cite *Burrows Co. v. Hollingsworth*, 415 Ill. 202, as opposing the defendant's position. The holding there, however, has no application here. In *Burrows* the Department of Revenue erroneously argued that sales to purchasers engaged in "service occupations" necessarily required the conclusion that the sales were for "use and consumption," even though the purchasers had transferred the property for a valuable consideration. This court said that contradicted the express provisions of the ROT Act as to the effect of a resale.

Another contention of the plaintiffs is that Department Rule 7(1)(h), which we have set out, is invalid as beyond the rule-making power of the Department of Revenue. It is invalid, they say, because it makes a substantive change in the law and that is an act to be taken by the legislature. The rule attempts to change the law, their argument is, by declaring that ROT liability attaches unless the airlines make a separate charge for the food, whereas the ROT (par. 440) says there will be no ROT liability if there has been a resale "for a valuable consideration." However, Rule 7, which we have set out above and which is entitled "Vendors of Meals," consistently with the ROT Act, begins by correctly stating that persons who sell meals to purchasers "for use or consumption" will be liable for ROT. It was not erroneous for the Department to add subpart (h) to Rule 7(1) in the light of decisions such as *Fefferman v. Marohn*, 408 Ill. 542, 547, and *Robertson Products Co. v. Nudelman*, 389 Ill. 281, 285, which, as has been shown above, require that vendors of food to airlines which serve meals to passengers as American did here must be considered as making sales for use or consumption and not for resale. Thus Rule 7(1)(h) simply recognizes and states indirectly that unless there is a separate charge made by the airlines for meals the airlines' expense in providing

food will simply be regarded as an operating cost of business, as was stated in *Robertson Products Co. v. Nudelman,* 389 Ill. 281.

This reason, which underlies and explains the "separate charge" provision in Rule 7(1)(h) makes it unnecessary to discuss further the plaintiffs' claim, based on misunderstanding, that the rule represents a wrongful exercise of the legislative power and an unreasonable tax classification.

As has been stated, the trial court held that American was liable for the ROT on meals served to crew members. Crew members are given a "meal money award" and "when they purchase a meal, the cost *** is then deducted from their allotment." The plaintiffs do not quarrel with the trial court's holding that this was a separate charge under Rule 7(1)(h), so as to make American, instead of Hot Shoppes, liable for the ROT.

However, American contends that section 2 of the ROT Act (Ill. Rev. Stat. 1963, ch. 120, par. 441) and the commerce clause of the Constitution of the United States (art. 1, sec. 8, par. 3) prohibit the imposition of the ROT on these sales to its crews.

Section 2 of the ROT Act provides, in part: "[The] tax is not imposed on the privilege of engaging in any business in interstate commerce or otherwise, which business may not, under the constitution and statutes of the United States, be made the subject of taxation by this State." Ill. Rev. Stat. 1963, ch. 120, par. 441.

It is clear that when a purchaser in a sale in Illinois takes delivery of the goods in Illinois the sale is not in interstate commerce and is taxable under State law, though the purchaser immediately takes the goods out of Illinois for use outside of Illinois. (*Pressed Steel Car Co. v. Lyons,* 7 Ill.2d 95, 98-99; *Superior Coal Co. v. Department of Revenue,* 4 Ill.2d 459, 466; see Ice, *The Retailers Occupation Tax Act and Related Tax Laws,* 1961 U. Ill. L.F. 614, 628-9.) Here, delivery to the crew members took

place when the food was loaded aboard the airplane. (See *Undercofler v. Eastern Air Lines, Inc.* (1966), 221 Ga. 824, 833, 147 S.E.2d 436, 443.) The State taxation of the sale of the food by American was not forbidden. "[T] he mere purchase of supplies or equipment for use in conducting a business which constitutes interstate commerce is not so identified with that commerce as to make the sale immune from a nondiscriminatory tax imposed by the State upon intrastate dealers \*\*\*. A nondiscriminatory tax upon local sales in such cases has never been regarded as imposing a direct burden upon interstate commerce \*\*\*." *Eastern Air Transport, Inc. v. South Carolina Tax Com.*, 285 U.S. 147, 152, 76 L. Ed. 673, 675, 52 S. Ct. 340, 341; see *Sinclair Refining Co. v. Department of Revenue*, 50 Ill.2d 201, 206; see also *State Tax Commission of Utah v. Pacific States Cast Iron Pipe Co.*, 372 U.S. 605, 10 L. Ed. 2d 8, 83 S. Ct. 925; *International Harvester Co. v. Department of Treasury of Indiana*, 322 U.S. 340, 88 L. Ed. 1313, 64 S. Ct. 1019.

For the reasons given, the judgment of the circuit court is affirmed.

*Judgment affirmed.*