FIFTH DIVISION
May 5, 2006

No. 1-03-2142

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL, INC., formerly known as AlliedSignal, Inc., | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| THE DEPARTMENT OF REVENUE OF THE STATE OF ILLINOIS, | ) ) ) | Honorable Alexander P. White, Judge Presiding. |
| Defendant-Appellee. | ) ) | |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Plaintiff Honeywell International, Inc. (formerly known as AlliedSignal, Inc.), filed a complaint for administrative review against defendant the Illinois Department of Revenue (Department) after the Department assessed service occupation tax against it for tax years 1992, 1993, and 1994. Section 3 of the Service Occupation Tax Act (Act) imposes a service occupation tax on tangible personal property transferred incident to the provision of a service by one engaged in the business of providing services. 35 ILCS 115/3 West (1994). In the instant case, the Department imposed service occupation tax on aircraft parts that plaintiff sold to several customers in conjunction with maintenance it provided on airplanes owned by those customers. The trial court affirmed the Department's imposition of service occupation tax (SOT). Plaintiff now appeals, contending that it was exempt from paying the SOT because it delivered, and its customers received, physical possession of the aircraft and the installed parts

outside Illinois.

## BACKGROUND

The following facts are not in dispute. During the tax years in question plaintiff was a diversified technology, manufacturing, and service company that served customers worldwide with aerospace products and services, automotive products, chemicals, fibers, and plastics. Plaintiff operated approximately 400 facilities and employed approximately 86,000 workers within the United States and 40 other countries. As part of its aerospace business, plaintiff provided and sold tangible personal property to owners of business aircraft during the tax years in question. Among the services provided by plaintiff were retrofits of business aircraft. A retrofit involved the removal of the original engines on the aircraft, the sale and installation of new engines, and the sale and installation of new pylons, nacelles, and associated wiring, plumbing, and cockpit instrumentation necessary to accommodate the new engines. A retrofit could also include the sale and installation of upgraded avionics, auxiliary power units, thrust reversers, and refurbishments to the interior of the aircraft.

During the audit period, plaintiff retrofitted 11 privately owned business aircraft and provided other services to 2 other business aircraft at a hangar it operated in Springfield, Illinois. The owners of these 13 aircraft resided outside Illinois, and each of the aircraft was hangared outside Illinois. In each of the 13 transactions, a written contract was entered into between plaintiff and the customer, specifying the retrofit and other modification work to be done. The aircraft was flown by the customer to the Springfield hangar, and the agreed-upon retrofit or other modification was performed. Eleven of the thirteen contracts provided that when plaintiff

completed the servicing of the aircraft in question, the customer was required to inspect and accept the installation of the parts before the airplane left Illinois.

After completion of the inspections and servicing, the aircraft were flown by plaintiff's personnel to several different delivery locations outside Illinois pursuant to agreements between plaintiff and its customers. Seven of the aircraft were flown to Delaware, two were flown to Indiana, two were flown to Colorado, one was flown to Massachusetts, and one was flown to Oregon. Only plaintiff's personnel were on the aircraft when they were flown to the out-of-state locations and delivered to their owners. When each of the 13 aircraft was delivered, the owner signed, at the delivery location, a final acceptance and delivery statement.

During the audit period, plaintiff filed monthly Illinois occupation and use tax returns, on which it reported its occupation and use tax liabilities, including the service occupation tax. Plaintiff did not report its sales of aircraft parts pursuant to the 13 contracts as subject to the service occupation tax.

Plaintiff charged and collected Indiana sales tax from two customers (in the amounts of $105,000 and $113,250, respectively) on the parts installed in the two aircraft delivered in Indiana, and Massachusetts sales tax from one customer (in the amount of $107,500) on the parts installed in the aircraft delivered in Massachusetts. Plaintiff did not charge or collect sales tax from the owners of the aircraft delivered in Delaware or Oregon because those states do not have a retail sales tax. Plaintiff did not charge or collect sales tax from the owners of aircraft delivered in Colorado because the parts installed in those aircraft were exempt from sales tax under Colorado law.

The Department conducted an audit of plaintiff's aircraft service operations at the Springfield hangar and issued three "Notices of Tax Liability" to plaintiff for Illinois service occupation tax, penalties, and interest in the aggregate amount of $3,664,375. The notices were based on the Department's contention that the aircraft parts sold by plaintiff and installed into the 13 aircraft were subject to the Illinois service occupation tax. Plaintiff filed three timely protests and requests for hearing.

On January 16, 2002, following an administrative hearing, the administrative law judge (ALJ) issued a written recommendation that plaintiff pay tax on the cost of all tangible personal property sold pursuant to the 13 contracts with out-of-state businesses. The ALJ found in relevant part:

> "After considering the documentary evidence in this record, as well as the pertinent legal decisions, I conclude that [plaintiff] delivered physical possession of the goods it transferred to customers incident to its sales of service when it completed its installation of the goods into or onto each aircraft, so that they became fully-functioning component parts of the customer's aircraft. *** Because of the very nature of its business, taxpayer delivered the goods to its customer in Illinois by physically installing them into or onto the customer's aircraft, at its Illinois hangar. As a practical matter, this means that [plaintiff] delivered physical possession of the goods to the customer when it satisfied its contractual, and federally required, obligation to have all of its installation work certified as being properly completed, and its customer's aircraft certified as being

4

airworthy, by a FAA inspector. ***

In the event [plaintiff] does not deliver physical possession of the new engines and other goods it installs into or onto its customer's aircraft at the time it makes them fully functioning component parts thereof, however, the SOT still applies to the transactions at issue. At the latest, [plaintiff] delivers physical possession of the goods it transfers incident to its sales of service when its customers come into Illinois and accept the goods and related services [plaintiff] has provided. That acceptance occurs while an aircraft is in Illinois, and after the customer has come into Illinois to conduct the final inspection called for by the agreement between them. It is only after such acceptance that [plaintiff] will agree to redeliver possession of the owner's bailed plane by flying it to the owner outside Illinois.

A customer/bailor's subsequent decision to have [plaintiff] start, takeoff and fly an aircraft from its Illinois hangar to a point outside Illinois to deliver it - as opposed to the installed goods the customer has already accepted in Illinois - back to the customer is, as [plaintiff's] contracts show, a discrete service that is ancillary to the primary subject matter of its agreement with each customer."

In addition to making the above findings, the ALJ concluded that plaintiff was entitled to a credit for the aggregate amount of tax due and paid to the states of Massachusetts and Indiana.

On February 8, 2002, the Director of the Department accepted the ALJ's recommendation, and in April 2002, plaintiff filed a complaint for administrative review of the

Director's decision in the circuit court of Cook County. On June 25, 2003, the circuit court issued its decision affirming the Director's imposition of service occupation tax and late penalties against plaintiff. In its memorandum decision and judgment, the court rejected plaintiff's argument that physical delivery of the airplane parts did not occur in Illinois. Plaintiff now appeals that decision.

ANALYSIS

We are required to review the Department's decision rather than the circuit court's decision. Calabrese v. Chicago Park District, 294 Ill. App. 3d 1055, 1065 (1998). "An administrative agency's decisions on questions of fact are entitled to deference and are reversed only if against the manifest weight of the evidence." Friends of Israel Defense Forces v. Department of Revenue, 315 Ill. App. 3d 298, 302 (2000). "We do not give deference to an agency's decisions on questions of law, and we review such decisions de novo." Arts Club of Chicago v. Department of Revenue, 334 Ill. App. 3d 235, 241-42 (2002).

A mixed question of law and fact "involves examination of the legal effect of a given set of facts" and is subject to the clearly erroneous standard of review. City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191, 205 (1998). "The clearly erroneous standard of review is between a manifest weight of the evidence standard and a de novo standard so as to provide some deference to the administrative agency's experience and expertise." Friends of Israel Defense Forces, 315 Ill. App. 3d at 303. The clearly erroneous standard requires us to accept the findings of the administrative agency "unless we are firmly convinced the agency has made a mistake." Randolph Street Gallery v. Zehnder, 315 Ill. App. 3d 1060, 1064 (2000).

The issue in the instant case is whether the Department properly found plaintiff was not exempt from service occupation tax. The facts related to this issue are not in dispute. Rather, the parties dispute whether those facts satisfy the requirements of the interstate commerce exemption included in the Act. Accordingly, we apply the clearly erroneous standard of review.

Section 3 of the Service Occupation Tax Act (Act) provides for the imposition of service occupation tax and states in relevant part:

> "A tax is imposed upon all persons engaged in the business
>
> of making sales of service (referred to as 'servicemen') on all
>
> tangible personal property transferred as an incident of a sale of
>
> service ***." 35 ILCS 115/3 (West 1994).

Plaintiff claims that section 3-45 of the Act and section 140.501(b) of the Illinois Administrative Code (Code), which contains the corresponding regulation promulgated by the Department, exempt it from paying the SOT imposed by the Department under section 3 of the Act. 35 ILCS 115/3-45 (West 1994); 86 Ill. Adm. Code § 140.501 (1994). We note that "a party claiming an exemption has the burden to prove clearly and conclusively that he is entitled to the exemption" (Telco Leasing, Inc. v. Allphin, 63 Ill. 2d 305, 310 (1976)), and that "[s]tatutory exemptions to taxation *** are to be strictly construed in favor of taxation" (XL Disposal Corp. v. Zehnder, 304 Ill. App. 3d 202, 207 (1999)).

Section 3-45 of the Act, known as the interstate commerce exemption, states in relevant part:

"No tax is imposed under this Act upon the privilege of

engaging in a business in interstate commerce or otherwise when

the business may not, under the Constitution and statutes of the

United States, be made the subject of taxation by this State." 35

ILCS 115/3-45 (West 1994).

Section 140.501 of the Code, which the Department promulgated to assist taxpayers in

determining when the interstate commerce exemption is applicable, states in relevant part:

"(a) Where tangible personal property is located in this State at the time of

its transfer (or is subsequently produced in Illinois) as an incident to a sale of

service, and is then delivered in Illinois, the serviceman incurs Service

Occupation Tax liability on the selling price of the property. The sale is not

deemed to be in interstate commerce if the purchaser or his representative

receives the *physical possession* of such property in this State. ***

(b) The serviceman does not incur Service Occupation Tax liability on

property which he resells as an incident to a sale of service under an agreement by

which the serviceman is obligated to make *physical delivery* of the goods from a

point in this State to a point outside this State, not to be returned to a point within

this State, provided that such delivery is actually made." (Emphasis added.) 86

Ill. Adm. Code § 140.501 (1994).

The parties do not dispute that the above provisions of the Code exempt a taxpayer from

paying service occupation tax if he delivers physical possession of the subject tangible personal

property outside of Illinois. Rather, they dispute the meaning of physical possession and whether the undisputed facts in the instant case established that plaintiff delivered physical possession of the parts incorporated into the airplane inside or outside of Illinois.

The Department contends that "[t]he Director did not clearly err in denying the interstate commerce exemption because [plaintiff] physically transferred the property to the customer in Illinois when it was installed into the aircraft and accepted by the customer." The Department contends that "[t]he facts establish that [plaintiff] did deliver physical possession of the aircraft parts in Illinois, both physically installing them into and onto the customer's property in Illinois and by requiring the customer to come into Illinois to accept those parts as conforming to the service contract."

Plaintiff contends that "[n]either the installation of the parts nor approval of the installation constitute[s] the delivery and receipt of physical possession of the parts in Illinois." Plaintiff reasons that "these facts [the installation of the parts and the approval of the installation] related only to the location at which [plaintiff's] services were provided, not where [plaintiff] delivered physical possession of the parts to the customers." We agree.

Neither the Act nor the Code defines "physical" or "possession," and accordingly, we look to their plain and ordinary meaning.

Black's Law Dictionary defines "physical" as:

"Relating or pertaining to the body, as distinguished from the mind or soul or the emotions. Material, substantive, having an objective existence, as distinguished from imaginary or fictitious;

9

real, having relation to facts, as distinguished from moral or constructive." Black's Law Dictionary 1032 (5th ed. 1979).

Black's Law Dictionary defines "possession" as:

"The detention and control, or the manual or ideal custody, of anything which may be the subject of property, for one's use and enjoyment, either as owner or as the proprietor of a qualified right in it, and either held personally or by another who exercises it in one's place and name. Act or state of possessing. That condition of facts under which one can exercise his power over a corporeal thing at his pleasure to the exclusion of all other persons.

The law, in general, recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct *physical* control over a thing, at a given time, is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or though another person or persons, is then in constructive possession of it." (Emphasis added.) Black's Law Dictionary 1047 (5th ed. 1979).

The above definitions unambiguously reflect that one does not have physical possession of tangible personal property unless he has the ability, at a given time, to exercise dominion and

control over that property. Plaintiff's installation of the parts into the aircraft did not magically render its customers able to control those parts. While the subject contracts called for plaintiff's customers to inspect and accept the completed work in Illinois, the contracts did not reflect that such inspections would require customers to exercise dominion and control over the property. Indeed, once the inspections were concluded, the customers left Illinois without their aircraft or the parts installed on the aircraft.

The requirement that property be physically delivered in Illinois derives from limitations imposed on states' taxing authority by the commerce clause of the United States Constitution. See U.S. Const., art. I, § 8 ("[t]he Congress shall have Power *** [t]o regulate Commerce *** among the several States"). The United States Supreme Court has observed that this requirement insures that only one state can tax the sale of tangible personal property. See Oklahoma Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 131 L. Ed. 2d 261, 115 S. Ct. 1331 (1995). In Jefferson Lines, the Supreme Court explained:

> "A sale of goods is most readily viewed as a discrete event
> facilitated by the laws and amenities of the place of sale, and the
> transaction itself does not readily reveal the extent to which
> completed or anticipated interstate activity affects the value on
> which a buyer is taxed. We have therefore consistently approved
> taxation of sales without any division of the tax base among
> different States, and have instead held such taxes properly
> measurable by the gross charge for the purchase, regardless of any

11

activity outside the taxing jurisdiction that might have preceded the sale or might occur in the future. See e.g., McGoldrick v. Berwind-White Coal Mining Co., supra.

Such has been the rule even when the parties to a sales contract specifically contemplated interstate movement of the goods either immediately before, or after, the transfer of ownership. \*\*\* The sale, we held, was 'an activity which • • • is subject to the state taxing power' so long as taxation did not 'discriminat[e]' against or 'obstruc[t]' interstate commerce, [citation.], and we found a sufficient safeguard against the risk of impermissible multiple taxation of a sale in the fact that it was consummated in only one State. As we put it in Berwind-White, *a necessary condition for imposing the tax was the occurrence of 'a local activity, delivery of the goods within the State upon their purchase for consumption.'* [Citation.] So conceived, a sales tax on coal, for example, could not be repeated by other States, for the same coal was not imagined ever to be delivered in two States at once." (Emphasis added.) Jefferson Lines, 514 U.S. at 186-87, 131 L. Ed. 2d at 272-73, 115 S. Ct. at 1339.

In the instant case, plaintiff flew the airplanes, which included the parts sold incident to servicing, not to locations inside of Illinois but to locations outside of Illinois. Plaintiff did not

relinquish, and its customers did not acquire, physical control of those airplanes until they were no longer in Illinois. Plaintiff charged and collected Indiana and Massachusetts retail sales tax from customers who received physical delivery of their airplanes in Indiana and Massachusetts as those states had a retail sales tax and did not exempt the subject transactions from sales tax. Accordingly, we conclude that the Department's decision to impose service occupation tax on the parts transferred by plaintiff pursuant to its servicing of the airplanes in question was clearly erroneous.

In support of its argument that denying a tax exemption in the instant case was proper, the Department cites three cases involving sales which were found not to be in interstate commerce: American Airlines, Inc. v. Department of Revenue, 58 Ill. 2d 251, 259 (1974), Pressed Steel Car Co. v. Lyons, 7 Ill. 2d 95, 104 (1955), and Superior Coal Co. v. Department of Finance, 377 Ill. 282, 296-97 (1941). The Department's reliance on these cases, however, is misplaced as in each case the purchaser took physical possession of the property in Illinois before leaving Illinois. See American Airlines, 58 Ill. 2d at 252, 259-60 (meals sold by retailer were loaded onto American Airlines airplanes in Illinois before airplanes were flown out of Illinois); Pressed Steel, 7 Ill. 2d at 97, 99 (railroad equipment sold by manufacturer to railroads was physically received in Illinois by railroads before those railroads transported it out of state); Superior Coal, 377 Ill. 2d at 296 (railway company purchasing coal "obtains complete possession of the coal in its cars in Illinois at the mines," and it is irrelevant that coal was intended for use outside of Illinois).

In addition to contending that plaintiff was not exempt from paying service occupation

13

tax, the Department contends that late payment penalties were properly assessed against plaintiff. Because the transactions in this case are not subject to service occupation tax, we find that the related penalties were improperly imposed.

CONCLUSION

Based on the foregoing reasons, we conclude that the Department's decision to assess service occupation tax and related penalties was clearly erroneous. Accordingly, we reverse the decision of the Department and we reverse the circuit court's decision affirming the decision of the Department.

Reversed.

GALLAGHER, P.J., and NEVILLE, J., concur.