KRISPY KREME DOUGHNUT
CORPORATION,
Appellant,

v.

DIRECTOR OF REVENUE, State
of Missouri, Respondent.

No. SC 91471.

Supreme Court of Missouri,
En Banc.

Dec. 20, 2011.

Igor Timofeyev, Paul, Hastings, Janof-
sky & Walker LLP, Washington, D.C.,

Edward F. Downey, Bryan Cave LLP, Jefferson City, for Krispy Kreme.

Jeremiah J. Morgan, Deputy State Solicitor for the Attorney General's Office, Jefferson City, for Director of Revenue.

Miriam J. Guggenheim, Covington & Burling LLP, Washington, D.C., for Retail Bakers of America and American Bakers Association, which filed a brief as friends of the Court.

WILLIAM RAY PRICE, JR., Judge.

## I. Introduction

Missouri law provides for two sales tax rates: a standard rate of 4 percent that applies to most retail sales, *see* section 144.020, RSMo 2000, and a reduced rate of 1 percent that applies to some—but not all—sales of food, *see* section 144.014, RSMo Supp.2010. Krispy Kreme Doughnut Corporation seeks review of a decision of the Administrative Hearing Commission ("AHC") that Krispy Kreme must collect tax at the 4–percent rate on all retail food sales at its Missouri locations.

The Court holds that "food prepared ... for immediate consumption on or off the premises" includes all food that is eaten at the place of preparation and purchase, while traveling away from the place of preparation and purchase, and immediately upon arrival at another location without any further preparation.

The AHC's decision is reversed in part and affirmed in part, and the case is remanded.

## II. Facts and Procedural History

### A. Krispy Kreme's business operations and its refund claim

At all times relevant to its claim, Krispy Kreme owned and operated four retail stores in the state of Missouri. Most of each store's sales consisted of donuts that were cooked on the premises. Each store also sold other food items, including bagged coffee beans and ground coffee, hot and cold coffee drinks, hot chocolate, milk, bottled water, bottled juices and soft drinks. Some of these additional food items, such as hot coffee and hot chocolate drinks, were prepared by the stores that sold them; other food products were not prepared by the stores.[1]

Krispy Kreme collects sales tax from its retail customers and regularly remits the proceeds to the Missouri Department of Revenue. Until 2006, Krispy Kreme collected and remitted sales tax at a rate of 4 percent for all its retail sales. But in early 2006, Krispy Kreme's state tax manager discovered section 144.014, which provides that

1. Notwithstanding other provisions of law to the contrary ... the tax levied and imposed pursuant to sections 144.010 to 144.525 and sections 144.600 to 144.746 on all retail sales of food shall be at the rate of one percent....

2. For the purposes of this section, the term "food" shall include only those products and types of food for which food stamps may be redeemed pursuant to the provisions of the Federal Food Stamp Program as contained in 7 U.S.C. Section 2012, as that section now reads or as it shall be amended hereafter, and shall include food dispensed by or through vending machines. For the purpose of this section, except for vending machine sales, the term "food" shall not include food or drink sold by any establishment where the gross receipts derived from the sale of food prepared by such establishment for immediate consumption on or off the premises of

---

1. In addition to their retail food sales, all of the stores also cooked donuts for wholesale distribution to other retailers, but these wholesale sales are not at issue in this case.

the establishment constitutes more than eighty percent of the total gross receipts of that establishment, regardless of whether such prepared food is consumed on the premises of that establishment, including, but not limited to, sales of food by any restaurant, fast food restaurant, delicatessen, eating house, or cafe.

This discovery prompted Krispy Kreme to seek a partial refund of taxes paid between 2003 and 2005 totaling $324,237. It arrived at this figure by calculating the difference between the 4–percent rate and the 1–percent rate as applied to 1) products clearly intended for home use, such as ground coffee and coffee beans, 2) products that its individual stores did not prepare, such as bottled water and bottled juices, and 3) donuts that had been cooked in-store. Krispy Kreme did not seek a refund of sales tax as to any sales of hot coffee or hot chocolate.

The director of revenue denied Krispy Kreme's refund claim on May 16, 2006. In explanation, the director stated only, "This refund request does not qualify under section 144.190 [2] ...." Krispy Kreme sought review by the AHC of the director's decision. Subsequently, Krispy Kreme reduced its refund claim to $277,992.20 after concluding that no transactions characterized as "dine-in sales" qualified for section 144.014's reduced sales tax rate.

## B. Evidence presented by Krispy Kreme

During proceedings before the AHC, Krispy Kreme presented three kinds of evidence. First, it presented evidence showing the time elapsed between the cooking and the sale of its donuts. Based on its daily preparation cycles, Krispy Kreme calculated that between 29.5 and 46.3 percent of its gross receipts derived from donuts that sat in its stores for intervals of at least one hour between rolling out of the oven or fryer and the moment of sale.

The second piece of evidence presented by Krispy Kreme related to the quantity of donuts purchased during each transaction. Krispy Kreme added the gross receipts derived from donuts sold by the dozen to the gross receipts derived from the sale of products not prepared by its stores. For each of its Missouri stores, and for each of the three years at issue, the sum of these two categories amounted to greater than 20 percent.

Finally, Krispy Kreme presented evidence relating to where its customers ate the donuts they had purchased. Krispy Kreme surveyed its customers over the course of several days at each of its Missouri retail locations, asking them whether they intended to eat their donuts at seating provided by the Krispy Kreme store, while in transit to another location, or after arriving at another location such as a home, office, church or park. When compiling the results of this survey, Krispy Kreme counted purchases by each customer who planned to eat the donuts at the store or while traveling away from the store as "immediate consumption sales" and counted purchases by all other customers as "off-premises consumption sales." Krispy Kreme then extrapolated the survey results to estimate the percentage of donut sales purchased for off-premises consumption and added this to the percentage of gross receipts derived from food items not prepared by the stores.

---

**2.** "If any tax, penalty or interest has been ... erroneously or illegally collected, or has been erroneously or illegally computed, such sum shall be credited on any taxes then due from the person legally obligated to remit the tax ... and the balance, with interest ... shall be refunded to the person legally obligated to remit the tax...." Section 144.190.2, RSMo 2000.

The sum amounted to greater than 20 percent.

During the AHC proceedings, the director did not attack the accuracy of any of the statistics offered by Krispy Kreme. Instead, she relied on the undisputed fact that all of Krispy Kreme's donuts are capable of being eaten without any further preparation on the part of customers.

## C. The parties' cross-motions for summary decision

In summer 2010, Krispy Kreme and the director filed cross-motions for summary decision.[3] The AHC held that many of the products sold at Krispy Kreme's retail locations, including its donuts, were "products [or] types of food for which food stamps may be redeemed" and, therefore, qualified for section 144.014's reduced sales tax rate. But it also held that more than 80 percent of Krispy Kreme's stores' gross receipts derived from sales of "food prepared [by the stores] for immediate consumption on or off the premises." Accordingly, the AHC sustained the director's motion for summary decision, overruled Krispy Kreme's motion, and denied Krispy Kreme's claim.

Krispy Kreme now petitions this Court for review, arguing that the AHC misinterpreted section 144.014.2 and that it is entitled to a refund. Because this case involves "the construction of the revenue laws of this state," it falls within this Court's exclusive appellate jurisdiction. Mo. Const. art. V, sec. 3.

## III. Standard of Review

■ This Court affirms a decision of the AHC whenever (1) it is authorized by law; (2) it is supported by competent and substantial evidence on the whole record; (3) mandatory procedural safeguards are not violated; and (4) it is not clearly contrary to the reasonable expectations of the General Assembly. Section 621.193, RSMo 2000. "This Court reviews the AHC's interpretation of revenue laws de novo." E & B Granite, Inc. v. Dir. of Revenue, 331 S.W.3d 314, 316 (Mo. banc 2011) (citation omitted).

■ Summary decision, which is a procedure modeled on the summary judgment procedure at the circuit court level,[4] is proper "if a party establishes facts that entitle any party to a favorable decision and no party genuinely disputes such facts." 1 CSR 15–3.446(6)(A). A claimant wishing to succeed on a summary decision motion, therefore, "must establish that there is no genuine dispute as to those material facts upon which the claimant would have had the burden of persuasion" at a hearing. ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp., 854 S.W.2d 371, 381 (Mo. banc 1993) (internal quotation marks omitted). For a defending party to succeed, however, it is enough to show "facts that negate any one of the claimant's elements facts" or "that the non-movant, after … discovery[ ] … will not be able to produce[ ] evidence sufficient to allow the trier of fact to find the

3. The parties previously had filed cross-motions for summary decision in spring 2009. In an order issued February 4, 2010, the AHC overruled both parties' motions. For reasons that need not be recited here because the issue is not currently before the Court, the AHC determined some evidence presented by Krispy Kreme to be inadmissible and, consequently, held that a genuine issue of material fact existed as to whether any of the food

products sold by Krispy Kreme were "food for which food stamps may be redeemed."

4. See Rule 74.04(c)(6) ("If the motion [for summary judgment], the response, the reply and the sur-reply show that there is not genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law, the court shall enter summary judgment forthwith.").

existence of *any one* of the claimant's elements." *Id.*

### IV. Analysis

This case is controlled by the language of two statutes, section 144.020 and section 144.014, which together create a two-fold sales tax scheme. The general rule is found in section 144.020, which provides in pertinent part:

A tax is hereby levied and imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state. The rate of tax shall be ... [u]pon every retail sale in this state of tangible personal property ... equivalent to four percent of the consideration paid or charged...."

Section 144.014.1 establishes a lower sales tax rate for purchases of "food." "Food" is defined in section 144.014.2 as

only those products and types of food for which food stamps may be redeemed pursuant to the provisions of the Federal Food Stamp Program as contained in 7 U.S.C. Section 2012, as that section now reads or as it shall be amended hereafter, and shall include food dispensed by or through vending machines. For the purpose of this section, except for vending machine sales, the term "food" shall not include food or drink sold by any establishment where the gross receipts derived from the sale of food prepared by such establishment for immediate consumption on or off the premises of the establishment constitutes more than eighty percent of the total gross receipts of that establishment, regardless of whether such prepared food is consumed on the premises

of that establishment, including, but not limited to, sales of food by any restaurant, fast food restaurant, delicatessen, eating house, or cafe.

Section 144.014.2 lays out a two-part test for determining which food products are "food" qualifying for the reduced tax rate. Part one of the test determines whether certain food products qualify for the reduced rate, while part two—also known as "the 80/20 test"—determines whether certain stores are eligible to charge its customers the reduced rate.[5] This case concerns only the 80/20 test because the AHC applied the first part of the test favorably to Krispy Kreme and the director does not dispute that portion of the AHC's holding. Specifically, the words that must be applied are "food prepared by such establishment for immediate consumption on and off the premises." There is no preexisting legal authority interpreting this phrase. The director proposes one possible interpretation, and Krispy Kreme submits three alternatives. Each is examined separately.

The director argues that she was entitled to summary decision based on the theory that all food prepared by Krispy Kreme's stores that was capable of being consumed immediately must be counted toward the 80/20 test's 80–percent threshold. But if that had been the legislature's intent, it could have said so simply, using the language "food capable of being consumed immediately." Instead, the legislature used the more extensive language "prepared by such establishment for immediate consumption on or off the premises." This additional language also must be given effect because "[w]hen interpreting a

---

5. In *Wehrenberg, Inc. v. Dir. of Revenue*, 352 S.W.3d 366 (Mo. banc 2011), the only other case in which this Court has interpreted section 144.014, there was no need to reach the second part of the test. Applying part one, the Court held that the products sold by Wehrenberg's movie theater concession stands were not "products [or] types of food for which food stamps may be redeemed." *See Wehrenberg*, 352 S.W.3d at 367.

statute, this Court must give meaning to every word or phrase of the legislative enactment." *State v. Moore*, 303 S.W.3d 515, 520 (Mo. banc 2010) (citation omitted).

Krispy Kreme, in contrast, argues that the language utilized by the legislature should be interpreted in relation to the actual buying and consumption practices of its customers. It offered three studies to support its case. First, Krispy Kreme offered evidence of the number of donuts that were purchased singly and by the dozen. Krispy Kreme proposes an inference that single donuts are immediately consumed and that donuts purchased by the dozen are not. Krispy Kreme also offered evidence of the time that passed between preparation of the donuts and their time of sale. The argument here is that consumption more than one hour after preparation could not be considered "immediate consumption." Finally, Krispy Kreme offered evidence of donuts that were consumed at the store or on the way to the purchaser's home. This evidence was presented on the theory that those donuts were immediately consumed, while donuts that were consumed after the purchaser reached his or her destination were not.

The Court rejects each interpretation proposed by Krispy Kreme as too limited in relation to the language used by the legislature. Donuts may be consumed immediately by the dozen if enough people are able to share the donuts at home, at work, at meetings or even at the store. Donuts may be consumed immediately upon purchase regardless of whether they were prepared more than or less than an hour before purchase. Donuts that survive past the doorway of the store and arrive intact at a home or meeting place

still can be consumed immediately upon reaching that destination.

■ The proper interpretation of the 80/20 test becomes apparent when all of the words "food prepared by such establishment for immediate consumption on or off the premises of the establishment" are given their full effect. Of particular importance are the words "on or off the premises," which modify "immediate consumption," clarifying that "immediate consumption" is not an abstract concept (food that *could* be consumed immediately) but a concrete event (actual consumption at the time of purchase or within the time necessary to travel to another location "off the premises"). Accordingly, "food prepared ... for immediate consumption on or off the premises" means all food that is eaten at the place of preparation and purchase, or while traveling to, or immediately upon arrival at another location without any further preparation.[6]

■ Neither party was entitled to summary decision because neither demonstrated that it was entitled to a favorable decision based on a correct understanding of the substantive law. In other words, while the parties agree on many facts, none of the facts on which they agree are conclusive to the outcome of the case. *Cf. Martin v. City of Washington*, 848 S.W.2d 487, 491 (Mo. banc 1993) ("[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

## V. Conclusion

Because neither party was entitled to summary decision, the AHC correctly

---

6. Because the statute is capable of reasonable interpretation, we need not consider whether the statute should be construed for or against either party as ambiguous.

overruled Krispy Kreme's motion; however, its decision to sustain the director's motion was not authorized by law. The Court, therefore, affirms the portion of the AHC's decision overruling Krispy Kreme's motion, reverses the portion of the AHC's decision sustaining the director's motion and remands the case with instructions to overrule the director's motion and to conduct further proceedings in accordance with the AHC's rules of procedure.

TEITELMAN, C.J., RUSSELL, BRECKENRIDGE, FISCHER and STITH, JJ., and SWEENEY, Sp.J., concur.

DRAPER, J., not participating.