

# SUPREME COURT OF MISSOURI
## en banc

GATE GOURMET, INC.,     )  *Opinion issued October 4, 2016*
             )
       Appellant,  )
             )
v.            )  No. SC95388
             )
DIRECTOR OF REVENUE,    )
             )
       Respondent. )

### PETITION FOR REVIEW OF A DECISION OF THE ADMINISTRATIVE HEARING COMMISSION
The Honorable Sreenivasa Rao Dandamudi, Commissioner

The Administrative Hearing Commission determined that the sale of frozen dinners by Gate Gourmet, Inc. to airline customers at the Lambert-St. Louis International Airport should be taxed at 4 percent under section 144.020, not the 1-percent rate provided for in section 144.014.[1]  Gate Gourmet seeks judicial review of this decision. This Court has jurisdiction under article V, section 3, of the Missouri Constitution.  The Commission's decision is affirmed.

---

[1]  Unless otherwise stated, all statutory references are to RSMo Supp. 2013

**Background**

Gate Gourmet is a global provider of catering and provisioning services for airlines and railroads. It owns and operates a facility in St. Louis County near the Lambert-St. Louis International Airport from which it sells frozen meals to various commercial airlines. Gate Gourmet filed sales tax returns with the Director of Revenue ("Director") for the taxable periods beginning January 1, 2008, and ending December 31, 2010, ("Audit Period") in which it reported sales of frozen meals to its airline customers at the reduced sales tax rate of 1 percent as provided in section 144.014.

The Director performed an audit for the Audit Period. This audit concluded that the sales of the airline meals did not qualify for the reduced sales tax rate because "[s]ales of food made to airlines for consumption during flight do not qualify for the reduced food tax rate because they are not sales of food for home consumption." Because these sales should have been taxed at 4 percent under section 144.020, the audit found that Gate Gourmet had a total sales tax liability of $292,788.19 for the Audit Period.

The Director issued 36 sales tax assessments to Gate Gourmet in accordance with the audit, which included both sales tax and statutory interest, totaling $296,357.29. Gate Gourmet paid all of the sales tax assessments under protest and filed protest affidavits with the Director for each assessment. On September 27, 2013, the Director issued a final decision denying Gate Gourmet's protests. Gate Gourmet sought review of this decision to the Commission. After an evidentiary hearing, the Commission determined that Gate Gourmet is not entitled to a refund of sales tax paid on the airline meals because

2

the meals were not sold "for home consumption." Gate Gourmet now petitions this Court for judicial review of the Commission's decision.

The meals at issue were prepared, packaged, and sold in bulk to commercial airlines pursuant to a contract for catering services between Gate Gourmet and each airline. Under such a contract, Gate Gourmet prepares meals according to menus approved by the airline. It is responsible for purchasing the food products and supplies needed to prepare and cook these meals, which are then plated on trays owned and provided to Gate Gourmet by the airline. The meals then are flash-frozen and kept frozen until requested by the airline for a particular flight. The airline orders the number of meals required from Gate Gourmet hours before each flight. Once an order is received, Gate Gourmet loads the meals onto carts and delivers them to the plane half an hour before departure. The meals then must be heated onboard the aircraft for approximately 30 minutes before they can be served to the passengers and crew. The "Meal Preparation Standards" contained in Gate Gourmet's catering agreements state that, once a frozen meal is removed from the freezer, the meal must be used within 24 hours or discarded. Finally, Gate Gourmet removes carts from arriving aircraft, disposes of the waste, and cleans the airline's trays for use with future meals.

## Analysis

Before the Commission, Gate Gourmet bore the burden of proving by a preponderance of the evidence that it was entitled to a refund. *Eilian v. Dir. of Revenue*, 402 S.W.3d 566, 567 (Mo. banc 2013) (citing § 621.050, RSMo 2000). The Commission rejected Gate Gourmet's claim and determined that the sales of frozen meals by Gate

3

Gourmet to its airline customers should be taxed at the 4-percent rate provided in section 144.020, not the reduced 1-percent rate set forth in section 144.014. Under section 621.193, RSMo 2000, this Court must affirm the Commission's decision if:

> (1) it is authorized by law; (2) it is supported by competent and substantial evidence based on the whole record; (3) mandatory procedural safeguards are not violated; and (4) it is not clearly contrary to the reasonable expectations of the legislature.

*Union Elec. Co. v. Dir. of Revenue*, 425 S.W.3d 118, 121 (Mo. banc 2014). Findings of fact by the Commission are binding on this Court if supported by competent and substantial evidence, but the Commission's construction of a revenue statute is reviewed *de novo*. *Fred Weber, Inc. v. Dir. of Revenue*, 452 S.W.3d 628, 629-30 (Mo. banc 2015).

Food is tangible personal property; under section 144.020, retail sales of tangible personal property are taxed at a rate of 4 percent. However, under section 144.014, some – but not all – retail sales of food are taxed at a lower rate of 1 percent. Section 144.014 provides, in pertinent part:

> 1. … [T]he tax levied and imposed pursuant to [section 144.020] on all retail sales of food shall be at the rate of one percent. ...
>
> 2. For the purposes of this section, the term "food" shall include only those products and types of food for which food stamps may be redeemed pursuant to the provisions of the Federal Food Stamp Program as contained in 7 U.S.C. Section 2012 … and shall include food dispensed by or through vending machines. For the purpose of this section, except for vending machine sales, the term "food" shall not include food or drink sold by any establishment where the gross receipts derived from the sale of food prepared by such establishment for immediate consumption on or off the premises of the establishment constitutes more than eighty percent of the total gross receipts of that establishment, regardless of whether such prepared food is consumed on the premises of that establishment, including, but not limited to, sales of food by any restaurant, fast food restaurant, delicatessen, eating house, or cafe.

4

In other words, section 144.014.1 provides an exception to the 4-percent rate established in section 144.020 for retail sales of food. But this exception does not apply to all retail sales of food. Instead, the breadth of this exception is limited to "food" as defined in the first sentence of section 144.014.2, which provides that "food" means food "for which food stamps may be redeemed" under 7 U.S.C. § 2012(k). This federal statute defines "food," in relevant part, to mean "any food or food product *for home consumption* except alcoholic beverages, tobacco, hot foods or hot food products ready for immediate consumption …." 7 U.S.C. § 2012(k) (emphasis added).[2]

Gate Gourmet concedes that its sales of frozen meals to its airline customers are taxable,[3] but contends that these sales should be taxed at 1 percent because they meet the

---

[2]   Even a retail sale of "food" as defined in the first sentence of section 144.014.2 and 7 U.S.C. § 2012(k) will not qualify for the 1-percent tax rate under section 144.014.1 if the sale is made by an establishment of the sort described in the second sentence of section 144.014.2. *See Krispy Kreme Doughnut Corp. v. Dir. of Revenue*, 488 S.W.3d 62 (Mo. banc 2016) ("*Kripsy Kreme II*"). This "establishment exclusion" to the exception in section 144.014.1, however, has no application to the present case.

[3]   For sales tax purposes, a "sale at retail" is defined as "any transfer made by any person engaged in business as defined herein of the ownership of, or title to, tangible personal property to the purchaser, *for use or consumption and not for resale* in any form as tangible personal property." § 144.010(11) (emphasis added). Gate Gourmet does not contest that its sale of frozen meals to airline customers is a "sale at retail" in that it transfers ownership of the meals to the airline for the airline's use or consumption and not for the airline's resale. *Cf. American Airlines, Inc. v. Dep't of Revenue*, 319 N.E.2d 28, 31 (Ill. 1974). In *American Airlines*, the airline had a contract with a caterer to supply the airline with meals for service to its passengers. In holding that these transactions were taxable as a sale at retail, the court stated:

> The food was for American's use and consumption …. [W]hen American purchased the food, or meals, … it was not for purposes of resale. Rather, the service of meals to passengers was to be considered a commercial amenity and operation expense, necessary in the competive [sic] field of air transportation.… [American] had to serve food in order to compete with other airlines….

*Id.* at 254-55. *See also Canteen Corp. v. Goldberg,* 592 S.W.2d 754, 758 (Mo. banc 1980)

5

definition of "food" in section 144.014.2. Gate Gourmet argues that, under 7 U.S.C. § 2012(k), all food (excluding alcoholic beverages and tobacco) qualifies as "food" unless it is sold hot "for immediate consumption." Because the meals it sells to airlines are frozen and must be reheated onboard the aircraft, Gate Gourmet insists these meals satisfy the definition of "food" incorporated into section 144.014.2 from 7 U.S.C. § 2012(k). As a result, Gate Gourmet claims that its airline meals – like frozen "TV dinners" sold in grocery stores – should qualify for the 1-percent sales tax rate under section 144.014.1.

Gate Gourmet's argument assumes the only thing that matters when applying the definition of "food" for purposes of section 144.014.1 is the type of food – viewed in the abstract – and that it is improper to consider the context of the sales transaction. In *Wehrenberg, Inc. v. Dir. of Revenue*, 352 S.W.3d 366 (Mo. banc 2011), this Court rejected substantially the same assumption in holding that context plays a necessary role in deciding whether concession items sold at a movie theater qualified for the 1-percent sales tax rate under section 144.014. Instead, the Court held that the only "'products and types of food' subject to the 1 percent sales tax are *food items for home consumption*. There is no doubt that the food sold at the theater concession stand is for consumption at the theater and *are not sold for home consumption*." *Wehrenberg*, 352 S.W.3d at 367

_____

(Bardgett, C.J., dissenting) ("This is quite similar to *American Airlines*, in which sales of good [sic] by a caterer to an airline for in-flight service to passengers were considered sales at retail for use and consumption by the airline. Obviously, the airline does not eat meals; but, nevertheless, it was the airline that agreed to supply the customers with meals, and the airline satisfied its contractual obligation by contracting with the caterer and purchasing the meals from the caterer for service to the customers.") (citation omitted).

(emphasis added). The Commission properly relied on *Wehrenberg* in rejecting Gate Gourmet's refund claim.

Gate Gourmet insists that the 1-percent rate in section 144.014.1 cannot be limited only to sales of food that actually is eaten in the consumer's dwelling and, therefore, argues that *Wehrenberg* holds only that "food" fails to satisfy the definition in section 144.014.2 and 7 U.S.C. § 2012(k) when it actually is eaten on the seller's premises. This is incorrect. *Wehrenberg* makes clear that the dispositive fact is not where the food in each particular sale actually is eaten but, instead, "whether the items are ***intended*** for home consumption." *Wehrenberg*, 352 S.W.3d at 367 (emphasis added).

Even though – in the abstract – the type of food sold at the theatre's concession stand is capable of being eaten anywhere (including the consumer's home), *Wehrenberg* holds that such an abstract "type of food" approach does not comport with the plain and unambiguous language of section 144.014.2 and its incorporation of 7 U.S.C. § 2012(k). *Id.* The use of the phrase "for home consumption," rather than "actually eaten at home" or "capable of being eaten at home," both permits and requires consideration of the context of the sale in determining whether the sale is taxed at the reduced rate under section 144.014.1. In *Wehrenberg*, therefore, because the concession items were intended "for consumption at the theatre," the Court concluded that this excluded any possibility that the items were intended "for home consumption." *Id.*

*Wehrenberg* controls the outcome of this case. Viewed in context, the frozen meals sold by Gate Gourmet were expected and intended to be eaten exclusively on its customers' aircraft. These meals could – in the abstract – be taken home by the

7

passenger (sans the airline's tray, of course) and eaten there. But, with grammatical apologies, that is not what Gate Gourmet sold (and the airlines bought) those meals "for." Instead, as the Commission found, the frozen meals Gate Gourmet sold to its airline customers "were intended to be eaten by the airlines' passengers, pilots, and crew while on board the customers' aircraft." That finding is based upon a proper construction of the law and is supported by competent and substantial evidence. Accordingly, the decision of the Commission is affirmed.[4]

In reaching this result, the Court is guided by the approach taken in *Krispy Kreme II*, which was decided after the Commission issued its decision in this case. There, the issue was the construction of the second sentence of section 144.114.2, which excludes sales in certain establishments from the 1-percent tax even though the "food" meets the definition in the first sentence of section 144.114.2. As here, the Court looked

---

[4] In its reply brief, Gate Gourmet raises 7 C.F.R. § 271.2, which defines "food" for purposes of the Food Stamp Program to mean any "food or food product intended for human consumption except alcoholic beverages, tobacco, and hot foods and hot food products prepared for immediate consumption." Based on this regulation, Gate Gourmet argues that the phrase "for home consumption" in 7 U.S.C. § 2012(k) means only "for human consumption." Certainly this regulation makes clear that the statutory phrase "for human consumption" was intended to exclude plant or animal food. But it does not follow that this is the only thing the statutory phrase was meant to exclude. More importantly, there is no reason to conclude that this is the intent of the Missouri statutory language, which incorporates by reference the federal statutory language and not the regulation. When the legislature intends to incorporate federal regulations, it plainly does so. *See, e.g.*, § 700.689, RSMo Noncum. Supp. 2014 ("commission shall implement a process, by rule, consistent with Title VI of P.L. 106-569 and any federal regulations promulgated pursuant to that act"); § 304.373 ("For the purpose of this section, 'hazardous materials' shall be as defined pursuant to Part 397, Title 49, Code of Federal Regulations, as adopted and amended."). Here, there is no reason to resort to the language of 7 C.F.R. § 271.2 when doing so would alter substantially the federal statutory language on which the Missouri statute expressly relies.

8

to how a food item is generally and regularly consumed, not to how such food – in the abstract – theoretically can be consumed.

> Notably, in *Krispy Kreme I,* this Court rejected the argument that "food prepared for ... immediate consumption" meant food that was merely ***capable*** of being immediately consumed.  A food that is capable of immediate consumption is not necessarily a food that is indeed regularly consumed immediately ….  Restaurants typically sell foods that are ***not just capable of immediate consumption, but are, in actuality, regularly consumed immediately*** – such as sandwiches, hamburgers, and salads.  Merely focusing on capability of immediate consumption is an incomplete analysis as it does not fully reach the essence of what restaurants primarily sell ….  In this limited sense, customers' actual consumption habits matter.  However, the ***classification of a food does not change based on an individual's actual consumption*** of that food.

*Krispy Kreme II*, 488 S.W.3d at 71 (citations omitted) (emphasis added).[5]

Anticipating that the Commission's decision would be affirmed, Gate Gourmet argues that sections 144.020 and 144.014.1, as applied in this case, violate the "uniformity" clause of the Missouri Constitution because they impose a higher sales tax on its sale of frozen airline meals than on a grocery store's sale of frozen "TV dinners." Assuming that Gate Gourmet has standing to assert such a challenge, it is not well taken. The uniformity clause in article X, section 3, of the Missouri Constitution requires that taxes "shall be uniform upon the same class or subclass of subjects within the territorial

---

[5]   By the same token, the Court emphasizes that statistical evidence showing where every purchaser actually consumes a particular food item will seldom – if ever – be necessary in applying the "for home consumption" definition in the first sentence of section 144.114.2.  As noted in *Krispy Kreme II*, "whether a food meets the above criteria often would be readily apparent by the surrounding circumstances indicating the general nature of the food, with actual or survey evidence of customer consumption optional."  *Krispy Kreme II*, 488 S.W.3d at 71.  *See also id*. at 72 ("Statistical evidence about individual consumption showing that some donuts are not *actually* consumed immediately does not change the general nature of Krispy Kreme's donuts.  Simply put, a donut is a donut.") (emphasis in original).

9

limits of the authority levying the tax." "The state, however, is not prohibited from treating one *class* of taxpayer differently from others. 'It is only necessary that there be a reasonable basis for the ... differentiation and that all persons similarly situated ... be treated alike.'" *McKinley Iron, Inc. v. Dir. of Revenue, State*, 888 S.W.2d 705, 708–09 (Mo. banc 1994) (emphasis in original) (quoting *Bopp v. Spainhower,* 519 S.W.2d 281, 289 (Mo. banc 1975)).

As explained above, the application of the 1-percent sales tax rate under section 144.014 does not distinguish among classes of sellers. Instead, setting aside the express carve outs for alcohol, tobacco, and hot food "for immediate consumption," the definition of "food" that section 144.014.2 incorporates from 7 U.S.C. § 2012(k) distinguishes between food that is sold "for home consumption" and food that is not. This is a reasonable distinction, and the Commission properly found that Gate Gourmet's frozen airline meals were not sold "for home consumption." It hardly could be argued otherwise.[6]

Finally, Gate Gourmet argues that – even if its constitutional argument is rejected and the Commission's decision is affirmed – that decision is "unexpected" under section 143.903.2, RSMo 2000, and can be applied only prospectively. The Court disagrees.

---

[6]  Though the proper sales tax rate for a grocery store's sale of frozen "TV dinners" is not before the Court, it does not stretch judicial imagination to suppose that a reasonable finder of fact could conclude that the context of a grocery store's sale of frozen "TV dinners" suggests strongly that such items are "for home consumption." A particular purchaser could – in the abstract – buy a frozen "TV dinner" from a grocery store and eat it somewhere other than at home (and could even heat the meal and carry it onboard a commercial flight). But this possibility would not preclude a reasonable fact finder from concluding that a frozen "TV dinner" purchased from a grocery store generally and ordinarily is "for home consumption."

10

Under section 143.903.2, a decision is "unexpected" if a "reasonable person would not have expected the decision or order based on prior law, previous policy or regulation of the department of revenue." A decision is not unexpected, however, merely because a statute was construed less favorably to a taxpayer than the taxpayer may have liked. *See Sneary v. Dir. of Revenue,* 865 S.W.2d 342, 348 (Mo. banc 1993) (statute does not preclude retrospective application of a decision "based upon a reasonable extension of the law or a reasonable application of the law to areas not previously specifically addressed").

Section 143.903 does not preclude retrospective application of the decision in this case. The Court holds that the Commission properly based its decision on the language of 144.014.2 and 7 U.S.C. § 2012(k) and that the Commission's application of that language was consistent with this Court's decision in *Wehrenberg*. The examples provided in the regulations cited by Gate Gourmet do not address facts similar to those of this case, and those examples that are provided are readily distinguishable. Accordingly, neither the decision of this Court nor the decision of the Commission is "unexpected" for purposes of section 143.903.

## Conclusion

The decision of the Commission is affirmed.

_____
Paul C. Wilson, Judge

All concur.

11