

# SUPREME COURT OF MISSOURI
## en banc

FRED WEBER, INC.,                  )
                                         )
          Respondent,         )
     v.                         )       No. SC94109
                                           )
DIRECTOR OF REVENUE,        )
                                         )
         Appellant.          )

### PETITION FOR REVIEW OF A DECISION OF THE ADMINISTRATIVE HEARING COMMISSION
The Honorable Sreenivasa Rao Dandamudi, Commissioner

### *Opinion issued January 13, 2015*

Fred Weber, Inc. ("Weber"), a Missouri corporation that operates quarries and asphalt plants, petitioned the Director of Revenue ("Director") for a sales tax refund under § 144.054.2.[1] Weber sold rock base and asphalt from its quarries and asphalt plants to Byrne and Jones Enterprises, and Leritz Contracting, Inc. (collectively "paving companies") to be used to construct and resurface roads and parking lots. Weber claimed the resurfacing "process" qualified for the exemption. The Director denied the refund, and Weber appealed to the Administrative Hearing Commission (AHC). The AHC reversed the decision of the Director and entered a decision in favor of Weber. The

---

[1] All statutory citations are to RSMo Supp. 2013, unless otherwise noted.

Director petitioned this Court to review the decision of the AHC. The AHC misapplied § 144.054.2.; therefore, its decision is reversed.

## Factual and Procedural Background

After Weber sold rock base and asphalt to the paving companies, it loaded the rock base and asphalt onto dump trucks and delivered it to construction sites. The paving companies then used the rock base as a foundation for the asphalt. The asphalt was approximately 300 degrees Fahrenheit upon delivery and had to be poured into place before cooling to a temperature of 175 degrees Fahrenheit. The paving companies did this by using a special piece of equipment called a "paver," which is designed to evenly distribute the asphalt across a section of the rock base. They then used 10-ton rollers and other heavy machinery to compact and level the asphalt before it finally cooled in place.

From October 2008 to September 2009, Weber sold the paving companies approximately $2.6 million worth of rock base and asphalt. In 2011, Weber filed an application for a sales tax refund, under § 144.054.2, of $139,654.62 for those sales. The director denied the request, and Weber appealed to the AHC. The AHC reversed, concluding that Weber qualified for the sales tax exemption under § 144.054.2. The Director petitioned this Court for review of the AHC's decision.

## Analysis

This case involves the construction of a revenue law, providing this Court with exclusive appellate jurisdiction. Mo. Const. art. V, § 3; *see also* § 621.189. The AHC ruled in favor of Weber because it concluded that the paving companies were engaged in "manufacturing," "processing," "compounding," or "producing" of a product, entitling Weber to a refund of sales tax paid on the products it sold to the paving companies. This Court reviews the AHC's interpretation of a revenue statute *de novo*. *AAA Laundry &*

*Linen Supply Co. v. Dir. of Revenue*, 425 S.W.3d 126, 128 (Mo. banc 2014). The AHC's decision will be upheld if authorized by law and supported by substantial and competent evidence on the record as a whole, if no mandatory procedural safeguard is violated, and if the affirmation of the AHC's decision does not create a result clearly contrary to the General Assembly's reasonable expectations when it delegated authority to the AHC. Section 621.193, RSMo 2000.

A taxpayer must show by "clear and unequivocal proof" that it qualifies for an exemption, and all doubts are resolved against the taxpayer. *Id.* Section 144.054.2 exempts the following from sales tax:

> [E]lectrical energy and gas, whether natural, artificial, or propane, water, coal, and energy sources, chemicals, machinery, equipment, and materials used or consumed in the manufacturing, processing, compounding, mining, or producing of any product, or used or consumed in the processing of recovered materials, or used in research and development related to manufacturing, processing, compounding, mining, or producing any product . . . .

The primary rule of statutory interpretation is to give effect to the General Assembly's intent as reflected in the plain language of the statute at issue. *Parktown Imports, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009). This Court interprets statutes in a way that is not hyper-technical but, instead, is reasonable and logical and gives meaning to the statute. *Id.* at 673.

In the context of this case, Weber had to prove three criteria to qualify under § 144.054.2 for the sales and use tax exemption: (1) that it sold materials used or consumed (2) during the manufacturing, processing, compounding, or producing (3) of a product. The taxpayer has the burden of proof. *Aquila Foreign Qualifications Corp. v.*

4

*Dir. of Revenue*, 362 S.W.3d 1, 3 (Mo. banc 2012). If the taxpayer fails to meet any of these three criteria, the taxpayer does not qualify for the exemption under § 144.054.2. *See Aquila*, 362 S.W.3d 1; *Union Elec. Co. v. Dir. of Revenue*, 425 S.W.3d 118 (Mo. banc 2014); *AAA Laundry*, 425 S.W.3d 126; *Fenix Constr. Co. v. Dir. of Revenue*, ___ S.W.3d ___, No. SC93915, 2014 WL 6679523 (Mo. banc 2014); *Ben Hur Steel Worx, LLC v. Dir. of Revenue*, ___ S.W.3d ___, No. SC94209 (Mo. banc 2015). The second prong is dispositive in this case.

The AHC first found that rock base and asphalt are materials. It then defined "processing," "manufacturing," "compounding," and "producing" and decided the paving companies met all four definitions when they poured asphalt over the rock base to construct and resurface roads and parking lots. The AHC also determined that a road and a parking lot are "products" for purposes of § 144.054.2. The AHC erred in deciding the construction activities that the paving companies were engaged in qualified as "manufacturing," "processing," "compounding," or "producing." This result is also clearly contrary to the General Assembly's expectations for tax exemption under § 144.054.2.

Relying on this Court's holding in *Branson Props. USA, L.P. v. Dir. of Revenue*, 110 S.W.3d 824, 826 (Mo. banc 2003), the AHC defined "manufacturing" as "'the alteration or physical change of an object or material in such a way that produces an article with a use, identity, and value different from the use, identity, and value of the original.'" The AHC also separately defined "processing" using the definition provided in § 144.054.1. The AHC, using the dictionary, defined "compounding" as "to put together

5

(as elements, ingredients or parts) to form a whole." Again using the dictionary, the AHC defined "producing" as "to give being, form, or shape to: make often from raw materials." Because of these definitions, the AHC incorrectly decided Weber qualified for a tax exemption under § 144.054.2 for its sales to the paving companies.

The AHC analyzed this case using the statutory definition of "processing," which is "any mode of treatment, act, or series of acts performed upon materials to transform or reduce them to a different state or thing, including treatment necessary to maintain or preserve such processing by the producer at the production facility." Section 144.054.1(1). This Court has previously had to interpret this statutory definition. In *Aquila,* the issue was whether Casey's General Stores' use of electricity to prepare food for customers constituted "processing" within the meaning of § 144.054.1 to qualify for tax exemption. 362 S.W.3d at 3. The Court held the definition of "processing" in § 144.054.1 was ambiguous. *Id.* The doctrine of *noscitur a sociis*—a word is known by the company it keeps—was used to resolve the ambiguity. *Id.* at 5. The result was a final interpretation of "processing" that had an industrial connotation that was commensurate with the other language of § 144.054.2, such as, "manufacturing," "compounding," "mining," and "producing," and that did not apply to retail food preparation. *Id.* The Court also held that, had the General Assembly *intended* for § 144.054.2 to cover retail food sales, it would have used language such as "preparing," "furnishing," or "serving." *Id*. The AHC expressed an understanding that retail food preparation did not constitute processing and stated "[t]hat holding from *Aquila* does not help us determine whether asphalt paving is processing, manufacturing, compounding or producing."

6

However, the idea that the General Assembly intended the plain and ordinary language of § 144.054.2 to apply only to industrial-type activities was reiterated in *Union Elec. Co.,* 425 S.W.3d at 124. There, the Court once again held that the terms in § 144.054.2 "are what can best be described as large-scale industrial activities." *Id.* This same legal analysis applies here. The paving companies were not engaged in "what can best be described as large-scale industrial activities." *Id.* They were engaged in construction. The word "construction" does not appear in § 144.054, nor do any words that would be associated with construction activities. The General Assembly knows how to exempt construction activities, but it did not do so here. This is demonstrated by review of other statutory provisions in chapter 144 creating sales tax exemptions.

Section 144.455 states:

> The tax imposed by subdivision (9) of subsection 1 of section 144.020 . . . is levied for the purpose of providing revenue to be used by this state to defray in whole or in part the cost of **constructing, widening, reconstructing, maintaining, resurfacing and repairing the public highways, roads and streets of this state** . . . .

(Emphasis added.) This statute demonstrates that the General Assembly is aware of the vocabulary concerning construction and maintenance of highways, roads, and streets in Missouri. Had the General Assembly intended for the construction activities performed in this case to be exempt from sales and use tax, it would have used this terminology.

Section 144.062 also expressly provides for a tax exemption for materials purchased for the "purpose of constructing, repairing or remodeling" for certain tax-exempt entities. Throughout this statute, the General Assembly chose language such as "construction," "repairing," "remodeling," and "project." Reading § 144.062 confirms

7

that, had the General Assembly intended for construction activities such as constructing and resurfacing roads and parking lots, for tax-exempt entities to be included in § 144.054.2, it would have included construction terminology.

Section 144.030.2(37), provides an additional exemption from sales and use tax for contractors purchasing materials to fabricate tangible personal property that is "used in fulfilling a contract for the purposes of constructing, repairing or remodeling facilities" for certain tax-exempt entities. These exemptions, all related to construction, along with the plain and ordinary language of § 144.054.2, demonstrate that the General Assembly did not intend to exempt the construction and resurfacing of roads and parking lots from sales tax. Therefore, the AHC misapplied § 144.054.2 when it determined the paving companies were engaged in "manufacturing," "processing," "compounding," or "producing" roads and parking lots. The decision of the AHC is reversed.

_____
Zel M. Fischer, Judge

All concur.

8