

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| DANNY JOE DIXON, | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD82346 |
| | ) | |
| MISSOURI STATE HIGHWAY | ) | FILED: September 24, 2019 |
| PATROL, et al., | ) | |
| Appellants. | ) | |

**Appeal from the Circuit Court of Andrew County**
**The Honorable Michael J. Ordnung, Judge**

**Before Division One:  Cynthia L. Martin, P.J., and**
**Victor C. Howard and Alok Ahuja, JJ.**

In 2003, Danny Dixon pleaded guilty to sexual misconduct in the third degree, a class C misdemeanor.  He was given a suspended imposition of sentence, and successfully completed his two-year probationary period.  As required by Missouri law, Dixon registered as a sex offender beginning in 2003.  In 2018, he filed a petition in the Circuit Court of Andrew County to have his name removed from the sex offender registry.  The circuit court granted Dixon's petition, and ordered that he be removed from the registry.  The Missouri State Highway Patrol appeals.  It argues that the circuit court erred in granting Dixon's removal petition because Dixon is a "tier III" offender subject to a lifetime registration obligation under §§ 589.400.4(3) and 589.401.3.[1]  We conclude that Dixon is a "tier I" offender, and that he was accordingly eligible for removal from the sex offender registry after

---

[1]     Unless otherwise indicated, statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, as updated through the 2018 cumulative supplement.

ten years. *See* § 589.401.4(1). Because the Highway Patrol does not otherwise dispute that Dixon met the conditions for removal from the registry, we affirm the circuit court's judgment.

### Factual Background

In July 2003, Dixon told a fifteen-year-old girl over the telephone that she sounded and looked sexy, and asked her about her sexual activity. Dixon was forty-seven years old at the time. He was charged in the Circuit Court of Andrew County with sexual misconduct in the third degree, a class C misdemeanor, in violation of § 566.095, RSMo 2000. Dixon pleaded guilty in November 2003. The circuit court suspended imposition of sentence and placed Dixon on probation for 2 years. He was successfully discharged from probation in November 2005. Due to his conviction,[2] Dixon was required to register as a sexual offender. He has continuously registered since his guilty plea in 2003.

On August 28, 2018, Dixon filed a petition in the Circuit Court of Andrew County pursuant to § 589.401, seeking to have his name removed from the sex offender registry. After holding an evidentiary hearing, the circuit court granted Dixon's petition. The court concluded that Dixon's conviction made him a "tier I" offender, and that he was accordingly entitled to petition for removal from the registry because more than ten years had elapsed since he was first required to

---

[2]        In this opinion we refer to the disposition of Dixon's 2003 offense as a "conviction" for ease of reference. We recognize that Dixon received a suspended imposition of sentence, and that such a disposition is generally not considered a "conviction" under Missouri law. *See, e.g., Hoskins v. State*, 329 S.W.3d 695, 698 n.3 (Mo. 2010); *Yale v. City of Independence*, 846 S.W.2d 193, 196 (Mo. 1993). The 2003 disposition required Dixon to register as a sex offender, however, because Missouri law imposes registration obligations on persons "adjudicated" of particular offenses. *See* §§ 589.414.5(1), .6(1), .7(2). "Adjudicated" is defined to include "a finding of guilt [and] plea of guilt," § 589.404(1), and accordingly includes persons who receive a suspended imposition of sentence following a guilty plea. *See R.W. v. Sanders*, 168 S.W.3d 65, 71 (Mo. 2005); *Yale*, 846 S.W.2d at 196. In addition, a suspended imposition of sentence is considered a "conviction" for purposes of the federal sex offender registration statutes, and a Missouri-resident offender required to register under federal law is likewise required to register under Missouri law. *See, e.g., Doe v. Belmar*, 564 S.W.3d 415, 417 n.3 (Mo. App. E.D. 2018).

2

register.  The court noted that "[t]he Prosecuting Attorney of Andrew County . . . has no objection to the relief requested by [Dixon]; and the victim in this matter, having previously been contacted by the prosecuting attorney, has no objection to [Dixon]'s name being removed from the sexual offender registry."  The circuit court's judgment found that Dixon: had successfully completed his probation for the underlying offense; had fully complied with his registration obligations; was "not a current or potential threat to public safety"; and had "in all respects complied with the requirements of Section 589.401" to be removed from the sex offender registry.  Accordingly, the court ordered that Dixon's name be removed from the sex offender registry, and declared "that he has no further requirements to register thereunder."

The Highway Patrol appeals.

## Standard of Review

"An appellate court will reverse a judgment of a trial court when it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." *Petrovick v. State*, 537 S.W.3d 388, 390 (Mo. App. W.D. 2018) (citations and internal quotation marks omitted).

"Questions of statutory interpretation are reviewed de novo." *Id.* (citation and internal quotation marks omitted).  "Any time a court is called upon to apply a statute, the primary obligation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *State ex rel. Hillman v. Beger*, 566 S.W.3d 600, 604–05 (Mo. 2019) (citation and internal quotation marks omitted).  "This Court interprets statutes in a way that is not hypertechnical but instead is reasonable and logical and gives meaning to the statute and the legislature's intent as reflected in

3

the plain language of the statute at issue." *IBM Corp. v. Dir. of Revenue*, 491 S.W.3d 535, 538 (Mo. 2016) (citation omitted).[3]

## Analysis

The Highway Patrol argues that the circuit court erred in removing Dixon's name from the sex offender registry, because the offense of which he was convicted rendered him a "tier III" offender, meaning that he was required to register as a sex offender for the rest of his life.

Deciding this appeal requires that we review the history of the offense of which Dixon was convicted, and the history of the sex offender registration statutes.

**A.**

Dixon pleaded guilty in 2003 to an offense which was then called "sexual misconduct in the third degree." At the time of his guilty plea, § 566.095, RSMo 2000, provided:

> 1. A person commits the crime of sexual misconduct in the third degree if he solicits or requests another person to engage in sexual conduct under circumstances in which he knows that his requests or solicitation is likely to cause affront or alarm.
>
> 2. Sexual misconduct in the third degree is a class C misdemeanor.

At the time, "[t]he authorized term[ ] of imprisonment" for a class C misdemeanor was "a term not to exceed fifteen days." § 558.011, RSMo Cum. Supp. 2003.

In 2013, the General Assembly amended the sexual misconduct statutes. *See* H.B. 215, 97th Gen. Assembly, 1st Reg. Sess. (2013). Section 566.090, RSMo 2000, which defined the offense of sexual misconduct in the first degree, was repealed. The offense was "transferred to section 566.101 and renamed second-degree sexual abuse." *State v. Ward*, 485 S.W.3d 380, 380 n.1 (Mo. App. E.D. 2016).[4]

---

[3] Abrogated on other grounds by § 144.030.2(5), RSMo Cum. Supp. 2018.

[4] In 2006, the General Assembly removed the language which criminalized "deviate sexual intercourse with another person of the same sex" from § 566.090, RSMo 2000. H.B. 1698, 93rd Gen. Assembly, 2nd Reg. Session (2006). Presumably this

As a result of the repeal of § 566.090, and the elimination of what had been the first-degree offense, the remaining sexual misconduct offenses were renamed without substantive modification. Thus, the offense of sexual misconduct in the second degree, defined in § 566.093, was renamed "sexual misconduct in the first degree." At the same time, sexual misconduct in the third degree – the offense of which Dixon had been convicted – was renamed "sexual misconduct in the second degree." *See* § 566.095. Although the name of Dixon's offense was altered, the 2013 amendment did not change: (1) the elements of the offense; (2) the classification of the offense as a class C misdemeanor; or (3) the punishment for the offense. With the additions indicated by <u>underline</u> and the deletions by ~~strikeout~~, the 2013 amendment of § 566.095 made the following non-substantive changes to the statute:

> 1. A person commits the ~~crime~~ <u>offense</u> of sexual misconduct in the ~~third~~ <u>second</u> degree if he <u>or she</u> solicits or requests another person to engage in sexual conduct under circumstances in which he <u>or she</u> knows that ~~his requests~~ <u>such request</u> or solicitation is likely to cause affront or alarm.
>
> 2. <u>The offense of</u> sexual misconduct in the ~~third~~ <u>second</u> degree is a class C misdemeanor.

The maximum authorized punishment for the offense remained what it was previously: "a term not to exceed fifteen days." § 558.011.1(8). Section 566.095 has not been amended since 2013.

**B.**

> Missouri's Sex Offender Registration Act ("SORA"), § 589.400 et seq., became effective on January 1, 1995. The statute

> imposes registration and notification requirements on persons committing crimes listed in chapter 566, certain other sexual crimes, and certain crimes that are not inherently sexual in nature but the legislature believes to

---

amendment was made in response to the decision in *Lawrence v. Texas*, 539 U.S. 558 (2003), which held that it was unconstitutional for States to criminally prosecute consenting adults for engaging in "sexual practices common to a homosexual lifestyle." *Id.* at 578.

5

> be associated with a risk of sexual offenses against minors, such as child kidnapping.

*Petrovick*, 537 S.W.3d at 390 (quoting *Doe v. Phillips*, 194 S.W.3d 833, 839 (Mo. 2006)).

When originally enacted, "the registration requirements imposed by Missouri's sex-offender registration statute '[were] lifetime registration requirements,'" with limited exceptions. *Wilkerson v. State*, 533 S.W.3d 755, 758 (Mo. App. W.D. 2017) (quoting § 589.400.3, RSMo 2016). In 2018, the General Assembly amended SORA. The 2018 amendments for the first time divided sexual offenders into three "tiers," based on the severity of the offenses of which they were convicted.[5] The 2018 amendments specified that only offenders in the highest tier – tier III – would be subject to a lifetime registration obligation.

Tier I, the least severe category, consists of offenders convicted of fifteen listed offenses, including "[s]exual misconduct in the second degree under section 566.095." § 589.414.5(1)(m). Although tier I sexual offenders are required to register for fifteen years, § 589.400.4, such an offender may file a petition "to have his or her name removed from the sexual offender registry" after ten years, if the offender meets certain criteria. § 589.401.4(1). If the circuit court finds that the petitioner meets the statutory criteria, the court will enter "judgment directing the removal of the name" of the offender from the registry, and such person "is not required to register under" SORA for that offense. §§ 589.401.16, .17.

Tier II consists of persons convicted of thirteen listed offenses. § 589.414.6. Tier II offenders are required to register for twenty-five years. § 589.400.4.

---

[5]     As explained in footnote 2, above, SORA requires certain persons to register as sex offenders even if they have not technically been "convicted" of a sexual offense. Although not strictly accurate, for ease of reference we use the term "convicted" to describe the offenders required to register under SORA.

Tier III, the most severe category, consists of persons convicted of thirty-six listed offenses. § 589.414.7. In addition, the statute includes a "catch-all" provision, which specifies that tier III includes "[a]ny offender who is adjudicated in Missouri for any offense of a sexual nature requiring registration under [SORA] that is not classified as a tier I or tier II offense in this section." § 589.414.7(5). A tier III sexual offender must register for life, and cannot petition the court for removal from the registry (unless the relevant offense was committed as a juvenile, and resulted in an adjudication of delinquency). §§ 589.400.4(3), 589.401.3.

**C.**

The Highway Patrol argues that the circuit court erred in granting Dixon's petition for removal from the sex offender registry because the offense for which he was convicted – sexual misconduct in the third degree – is not listed in the definition of tier I and tier II offenders, and he must therefore be considered a tier III offender under the catch-all provision, § 589.414.7(5).[6] The crux of the Highway Patrol's argument is that Dixon's offense of sexual misconduct in the third degree under § 566.095, RSMo 2000, is not the same as "sexual misconduct in the second degree under section 566.095," the offense listed in the definition of tier I. § 589.414.5(1)(m). We disagree.

In 2003, Dixon was convicted under § 566.095 of an offense which is today known as "sexual misconduct in the second degree." The offense that was called "sexual misconduct in the third degree" prior to 2013 is the same offense that is today known as "sexual misconduct in the second degree": the pre- and post-2013 offenses have the same elements; are both classified as class C misdemeanors; and are subject to the same range of punishment. Besides the non-substantive changes

---

[6]     Notably, the Highway Patrol makes no argument that Dixon should not get the benefit of the 2018 amendments to SORA because he was convicted of his predicate offense in 2003.

to make the statute gender neutral and to replace the term "crime" with the term "offense," all that has changed is the name – a fact that Highway Patrol concedes. If anything, the *current* name of the offense (which characterizes it as a "second-degree" crime) makes that offense sound <u>*more serious*</u> than the "third-degree" offense of which Dixon was convicted. Moreover, as our review of the statutory history of § 566.095 demonstrates, the name of Dixon's offense was changed in 2013 only because the General Assembly chose to rename the pre-2013 offense of sexual misconduct in the first degree, and transfer that offense to a different statutory section. Because of the elimination of what had previously been "sexual misconduct in the first degree," the legislature renamed what were formerly the second-degree and third-degree offenses, to fill the void created by elimination of the previous first-degree offense.

Although the definition of a tier I offender refers to Dixon's offense by its current name in § 589.414.5(1)(m), that provision must be read to include offenders like Dixon who were convicted of the same offense under its former name. The Highway Patrol argues that the mere act of renaming Dixon's offense had the effect of subjecting him to a lifetime sex offender registration obligation, even though persons convicted of the same offense after 2013 are entitled to removal from the sex offender registry after ten years. We refuse to attribute such significance to the 2013 renaming. As William Shakespeare observed more than 400 years ago, "What's in a name? That which we call a rose / By any other name would smell as sweet." *Romeo and Juliet*, Act II, scene ii. Although arising in different contexts, prior cases have found that merely changing the name of an offense has no substantive effect, where it is not accompanied by any change to the elements of the offense, or to the authorized punishment for the offense.[7]

---

[7] *See State v. Elder*, 36 S.W.3d 817, 820-21 (Mo. App. S.D. 2001) (appellant not entitled to withdraw guilty plea, or to resentencing, based on renaming of offense, and re-

The Highway Patrol's argument is inconsistent with the fundamental principle that "the construction of a statutory scheme should avoid unreasonable or absurd results." *State ex rel. Hillman*, 566 S.W.3d at 608 (citation and internal quotation marks omitted). If not absurd, it is at a minimum unreasonable to attribute to the General Assembly the intent to treat offenders convicted of a "third degree" offense more severely than persons later convicted of the same offense, simply because it is now called a "second degree" offense. It would be unreasonable to attribute significant, substantive effect to the legislature's "housekeeping" act of renaming the offense to which Dixon pleaded guilty.[8]

The Highway Patrol's argument would lead to an even more incongruous result with respect to offenders convicted of the offense that was called "sexual misconduct in the second degree" prior to 2013. That offense was defined in § 566.093, RSMo Supp. 2004. Post-2013, the offense is now denominated "sexual misconduct in the first degree." *See* § 566.093. SORA specifies that persons convicted of "[s]exual misconduct in the first degree under section 566.093," as well

codification of offense in different statutory section, prior to his sentencing; "the fact that the amendments changed the name of the offense from 'Sodomy' to 'Statutory sodomy in the first degree' is irrelevant; the authorized term of imprisonment for the act remained the same"); *State v. El Dorado Mgmt. Corp., Inc.*, 801 S.W.2d 401, 406 (Mo. App. E.D. 1990) (referring to offense by new name in verdict director was not a fatal variance from charging instrument; despite the name change, "[f]or purposes of the charge made against the appellant, . . . the statute has remained, in essence, the same").

[8] In a similar context, we refused to attribute substantive effect to an amendment which renumbered some of the sub-sections of a statute, and created confusion concerning certain cross-references carried forward from the pre-amendment statute. We explained:

> We cannot believe that the legislature intended to make such a drastic change . . . simply by taking what had been subparagraphs 198.067.2(1)(a)–(e) and renumbering them, without relevant change, as subparagraphs 198.067.3(1)–(5). . . . [I]f a statute goes through a revision by renumbering or rearranging a section without changing the substance of the statute, the legislature is presumed to have adopted the construction which had already existed.

*State Dep't of Soc. Servs., Div. of Aging v. Carroll Care Ctrs., Inc.*, 11 S.W.3d 844, 853 (Mo. App. W.D. 2000) (Stith, J.) (citation omitted).

9

as persons convicted of "[s]exual misconduct in the second degree under section 566.095" are tier I offenders. §§ 589.414.5(l), (m). Yet, although persons convicted of "sexual misconduct in the second degree" prior to 2013 were convicted under a *statutory section* listed in the definition of a tier I offender, and were convicted of an offense whose *name* appears in the definition of a tier I offender, under the Highway Patrol's argument they would – like Dixon – be subject to lifetime sex offender registration.

The unreasonableness of the Highway Patrol's proposed statutory construction is highlighted by examining the *other* offenses included within tier III. All of those offenses are significantly more serious than the offense of which Dixon was convicted. Dixon pleaded guilty to a class C misdemeanor which carried a maximum authorized sentence of 15 days' incarceration. Of the thirty-six offenses specifically identified in the definition of a tier III offender, *all* are felonies, with the sole exception of a class B misdemeanor which is included in the definition only if the offense is committed by a recidivist felony offender.[9] It is hard to believe that the General Assembly intended for Dixon's conviction of a class C misdemeanor to render him a tier III offender, when *every* other person falling within that category

---

[9] The single non-felony listed in the definition of tier III is the offense of patronizing prostitution, which is generally characterized as a class B misdemeanor. *See* § 567.030.3. Patronizing prostitution is included in the definition of a tier III offender, however, only if the offender "is a persistent offender." § 589.414.7(2)(dd). A "persistent offender" "is one who has been found guilty of two or more felonies committed at different times." § 588.016.3.

Sexual conduct with a nursing facility resident or vulnerable person in the first degree is included in the definition of a tier III offender only if "the punishment is greater than a year." § 589.414.7(2)(m). The offense is generally described as a class A misdemeanor, *see* § 566.115.2, for which the maximum term of imprisonment would be "a term not to exceed one year." § 558.011.1(6). The offense is classified as a class E felony, however, on "[a]ny second of subsequent violation of this section," *see* § 566.115.2, which would subject the offender to the level of punishment falling within SORA's definition of a tier III offender. § 558.011.1(5).

10

must either be convicted of a *current* felony, or have been convicted of two or more *prior* felonies.

Notably, the class C misdemeanor of sexual misconduct in the second (formerly third) degree is the *lowest* classification offense even in *tier I* – all of the other tier I offenses are class B misdemeanors or greater. Indeed, Dixon's offense is the lowest classification offense listed in the definition of *any* of SORA's three tiers. It hardly makes sense for the *least severe* offense in the entire tiered structure to be placed in the *highest* tier.

It bears emphasis that, for purposes of statutory construction, the Missouri Supreme Court has characterized SORA as a "penal statute." *J.S. v. Beaird*, 28 S.W.3d 875, 877 (Mo. 2000); *see also Kersting v. Replogle*, 492 S.W.3d 600, 605–07 (Mo. App. W.D. 2016). Penal statutes are to be strictly – not liberally – construed, and the "rule of lenity" is applied to resolve ambiguities against the government. *Id.*; *see also*, *e.g.*, *United Parmacal Co. of Mo., Inc. v. Mo. Bd. of Pharmacy*, 208 S.W.3d 907, 913 (Mo. 2006); *Spradlin v. City of Fulton*, 982 S.W.2d 255, 261-62 (Mo. 1998). These principles provide additional justification for rejecting the Highway Patrol's proposed interpretation.

The Highway Patrol cites to *Robertson v. State*, 392 S.W.3d 1 (Mo. App. W.D. 2012),[10] and argues that "sexual misconduct in the third degree under Section 566.095, RSMo (1995), cannot be the same crime as any other crime." In *Robertson*, we held that the offense of "deviate sexual assault" listed in the Sexually Violent Predator Act "was a different offense than the crime of deviate sexual assault in the first degree for which Robertson was convicted in June 1995," because the earlier and later offenses had materially different elements (even though they had similar sounding names). 392 S.W.3d at 4. As we have explained above, this case is

---

[10] Abrogated by 2013 amendment to § 632.480(4). *See* H.B. 215, 97th Gen. Assembly, 1st Reg. Session (2013).

11

fundamentally different: the elements of Dixon's offense are _identical_ to those of the offense currently known as "sexual misconduct in the second degree."

The Highway Patrol also argues that the General Assembly knew how to list outmoded offenses in SORA when it wished to, since it provided that offenders would fall within tier I if they had been convicted of "[c]hild molestation in the second degree under section 566.068 as it existed prior to January 1, 2017, if the punishment is less than one year." _See_ § 589.414.4(n); _see Robertson_, 392 S.W.3d at 5 (concluding that "the legislature was fully aware of the necessity to list offenses which no longer existed, when it wanted to do so," based on the listing of certain "archaic offenses" in the definition of a "sexually violent offense"). The elements and classification of the offense of child molestation in the second degree were fundamentally altered as of January 1, 2017, however. Prior to 2017, the offense constituted a class A misdemeanor and consisted of the act of subjecting a person less than seventeen years of age to sexual contact. _See_ §§ 566.068.1, .2, RSMo 2000. Post-2017, the offense was re-classified as a class B felony, and now consists of the acts of subjecting "a child who is less than twelve years of age" to sexual contact, or subjecting a child less than seventeen to sexual contact in circumstances which constitute "an aggravated sexual offense." § 566.068. Given these fundamental changes to the offense, it is not surprising that the legislature treated the pre- and post-2017 offenses differently, specifying that those convicted before 2017 would constitute tier I offenders, while those convicted of the substantially more serious post-2017 offense would fall within tier III. _See_ § 589.414.7(q). We note yet again that the nature of the offense of which Dixon was convicted was _not_ altered by the 2013 amendment to § 566.095.

## Conclusion

Under SORA, Dixon is a tier I sexual offender and was therefore eligible to petition for removal from the sex offender registry once more than ten years had

12

elapsed since the registration obligation was imposed. Dixon's 2018 removal petition was timely, given that he was first subject to a registration obligation in 2003. Because the Highway Patrol does not contend that Dixon otherwise failed to satisfy the statutory requirements for removal from the registry, the judgment of the circuit court is affirmed.

_____
Alok Ahuja, Judge

All concur.